not that "he did feloniously, willfully, and of malice aforethought kill and murder her." This denoted a distinction which the English cases cited refused to make in the succession cases already cited. But none of those cases disclosed the particular facts stipulated before me, and these peculiar and particular facts permit me to conclude that in equity George Fuchs ought not to be barred from a succession under the statute of distributions, because he had not the slightest intention of killing his wife and profiting by her death, which is the very essence of the equitable bar, as I see it. In equity, George Fuchs is not barred from succession under the statute of distributions.

Settle decree accordingly.

In re HARDEN'S ESTATE.

(Surrogate's Court, New York County. December 23, 1914.)

1. WILLS (§ 704*)—CONSTRUCTION—JURISDICTION OF SURROGATE.

Under Code Civ. Proc. § 2510, subd. 8, giving a Surrogate's Court jurisdiction, in a special proceeding brought therefor, to determine the validity, construction, or effect of any disposition of property contained in a will proved in such court, it cannot, where any party taking under the will has a right to try his title by jury, without his consent, determine validity of the testamentary disposition; section 2538, as to direction by the surrogate of trial by jury of a controverted question of fact, having no application to such a proceeding.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1680, 1681; Dec. Dig. § 704.*]

2. JURY (§ 28*)—WAIVER—INFANTS—SPECIAL GUARDIANS.

Any right of infant parties to a trial by jury in another court cannot be waived by special guardians appointed for a proceeding in the Surrogate's Court to determine the validity, construction, or effect of a disposition of property by will.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 176–196; Dec. Dig. § 28.*]

3. WILLS (§ 695*)—CONSTRUCTION—CONDITION OF CAUSE.

Not only will the Surrogate's Court not entertain a petition, under Code Civ. Proc. § 2615, by executors and testamentary trustees for construction of the will, unless there is some substantial doubt, but it will not do so before final accounting, where construction is sought merely for the purpose thereof.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1665–1669; Dec. Dig. § 695.*]

4. WILLS (§ 702*)—CONSTRUCTION—HEARING—OBJECTIONS.

Under Code Civ. Proc. § 2615, providing that an executor interested in obtaining a construction of the will may present to the Surrogate's Court a petition, and, if it entertains it, citation shall issue to all persons interested, and on return thereof it shall make such decree as justice requires, objection that there is no ground for interposition of the surrogate may be made on return of the citation, or on the hearing; issuance of the citation being only process, and not disposing of the merits of the application.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1679; Dec. Dig. § 702.*]

In the matter of the estate of James Harden. Petition dismissed.

Rumsey, Sheppard & Ingalls, of New York City, for petitioners.

Osborne, Lamb & Garvan, of New York City, for Emma Louise Harden and another.

Egerton L. Winthrop, Jr., of New York City, guardian ad litem for Dorothea Harden.

A. Perry Osborn, of New York City, special guardian for Acheson Adair Harden and another.

FOWLER, S. This is a proceeding brought on by a petition of the executors and trustees of the trusts enacted under the will of James Harden to determine the validity, construction, or effect of dispositions of property contained in a will proved in this court. It is brought pursuant to the provisions of the new Surrogate's Law contained in the Code of Civil Procedure for the year 1914. By subdivision 8 of section 2510, C. C. P., the Surrogate's Court is given jurisdiction—

"to determine the validity, construction or effect of any disposition of property contained in any will proved in his court, whenever a special proceeding is brought for that purpose. * * *"

By new section 2615, C. C. P.:

"An executor, * * * or any person interested in obtaining a determination as to the validity, construction or effect of any disposition of property contained in a will, may present to the Surrogate's Court in which such will was probated, a petition setting forth the facts which show his interest, * * * and the particular portion of such will concerning which he requests the determination of the court. If the surrogate entertains the application, a citation shall issue to all persons interested in the question to be presented, to show cause why such determination should not be made. On the return of the citation the surrogate shall make such decree as justice requires."

Before the year 1914 the surrogate had power to construe provisions of wills in probate proceedings. Section 11, c. 359, Laws of 1870; section 2624 of former C. C. P. This jurisdiction was at first confined to personal property, but by chapter 584, Laws of 1910, it was extended to testamentary dispositions of real property. Under these laws it was held that the legislative intention was to confer on the surrogate a power and jurisdiction similar to that theretofore possessed by courts having equitable powers. Matter of Mount, 185 N. Y. 162, 167, 77 N. E. 999, affirming 107 App. Div. 1, 95 N. Y. Supp. 490.

Pursuant to new section 2615, C. C. P., and the petition presented in this matter a citation was issued pro forma, and on the return thereof no objection was formally taken to the surrogates' jurisdiction of the proceeding. On the contrary, all the persons cited appeared and seemed to acquiesce in the jurisdiction of this court, and they asked for such construction as they are advised their several interests require. As this is the first instance before me under the new law, and there are many following, I felt it incumbent on me when the matter came on for argument to suggest to counsel certain difficulties attending the application of the new act in so far as they then occurred to me. Before proceeding now to consider the subject-matter of the petition, let me again briefly review the situation created in this court by the new act in matters of this character.

[1, 2] The jurisdiction cast upon the surrogate by the new act is novel to some extent, and vast, and its exercise requires caution and profound consideration, or the title to the greatest estates in this city may be unsettled, and possibly the parties in interest undone or damaged or ruined, by our rashness or inconsideration. I am not disposed, therefore, to proceed on the act without the utmost care and only after the fullest consideration. It must be readily apparent to any one that the title to nearly all the property in this jurisdiction passes in some way through this court, and the title may come here for consideration under our new act. To my mind the temerity and the technical inadequacy of the new legislation under review is unexampled in the history of lawmaking. It needs to be immediately supplemented by the utmost caution and consideration on the part of the surrogate, or the law of property will be thrown into great confusion in this state.

Before reviewing briefly the nature of the jurisdiction purporting to be transferred by the new act to the surrogate, let me point out that similar legislation, but of a much more guarded character, has not been unfamiliar in other common-law countries. For example, in England, Act 22 and 23 Vict. c. 35, § 20, permitted executors and administrators to apply to the court in a summary way for the opinion, advice, or direction of a judge on any question of administration and they would be indemnified thereby. But the court soon declined upon such an application to construe an instrument or make any order affecting the rights of parties. Re Lorenz's Settlement, 1 Dr. & Sm. 401. Otherwise they said the effect would be that a will affecting the most difficult questions and property however large might be construed and most important rights decided without proper precautions. Per Kindersley, V. C., Re Lorenz's Settlement, 1 Dr. & Sm. p. 404. Finally when a difficult question of law was involved the parties were, in England, put to their action. Re Mockett's Will, Johns. 628.

Doubtless there is some difference between the scope of Act 22 and 23 Vict. c. 35, and the scope of the act now under my consideration. The object of the Victorian act was to assist the executors in little matters of discretion. The illustrative point here is that the interests of property in England soon made it necessary to limit the application of that act. Can there be a better practical demonstration of the fact that short cuts to relief are often full of danger to estates?

By the new legislation the power is attempted to be conferred on this court to determine the validity, construction, or effect of any disposition of property, both real and personal, contained in any will. This grant of jurisdiction involves the powers formerly committed either to the courts of law or the courts of equity under our system of jurisprudence. Nay, more, it involves both jurisdictions.

There are, however, obvious inherent limitations of this grant of jurisdiction. Certainly it cannot confer a power or jurisdiction on the surrogate to determine the validity of any title by devise, where the prior remedy was an action at law, or one in the nature of ejectment or to try title. Brady v. McCosker, 1 N. Y. 214; Chipman v. Montgomery, 63 N. Y. 221; Weed v. Weed, 94 N. Y. 243; Anderson v. Anderson, 112 N. Y. 104, 114, 19 N. E. 427, 2 L. R. A. 175; Corley

v. McElmeel, 149 N. Y. 228, 236, 238, 43 N. E. 628; Jones v. Richards, 24 Misc. Rep. 625, 54 N. Y. Supp. 126; Whitney v. Whitney, 63 Hun, 59, 18 N. Y. Supp. 3; McKinlay v. Van Dusen, 76 App. Div. 200, 78 N. Y. Supp. 377. Nor, as I think, can the right of the infant parties to a trial by jury be waived by special guardians appointed for this proceeding. Such special guardians are really guardians ad litem or guardians appointed ad hoc only.

If the petition in this court for construction of a will could properly be converted and treated as an ejectment proceeding its determination could not then proceed in this court. Under the most liberal construction of the new act I hold that section 2538, C. C. P., has no application to a jury trial in a proceeding brought for the construction of a will. Such issues could not be tried by jury in this court. Any judgment which the surrogate, without a jury, might render on the validity of a devise, would not be binding in the proper forums, unless a jury trial were expressly waived. Thus it is apparent that the surrogate ought not to pass, in a proceeding to obtain a construction of a will, upon the validity of any disposition of real property where a trial by jury is a matter of right and not waived. This, I think, is the first proper limitation upon the exercise by the surrogate of the new jurisdiction to construe wills and devises. For the present I am determined that I will not pass on the validity of any devise where there is a remedy in the devisee in the nature of an ejectment, at least before I am advised by superior authority that I may so do. I will not indulge in innocuous and worthless judgments knowingly.

Formerly courts of equity, or general courts vested with equitable as well as common-law powers, would not pass upon the validity of a will disposing of real property unless there was a trust (Dill v. Wisner, 88 N. Y. 153), nor could it pass upon the validity of a power of sale given to executors by a will (Mellen v. Mellen, 139 N. Y. 210, 34 N. E. 925). The powers of the surrogate under the new act cannot be greater or altogether different from those formerly vested in the courts of equity and law combined. There must be some reasonable limitation or restriction upon the powers of the surrogate under the new act in passing on the rights of parties who take under wills. A very plain limitation to my mind is this: In no case where any party taking under the will has a right to try his title by jury can this court, without his consent, determine the validity of the testamentary disposition. This operates as a general limitation upon the surrogate's jurisdiction to determine the validity, construction or effect of any such disposition. In no such case can a special guardian appointed for such a proceeding waive the infant's right to trial by jury in another court.

It is doubtless the fact that since section 1866, C. C. P., taken from chapter 238, Laws of 1853, the validity, construction, or effect of a testamentary disposition of real property situated within this state may be determined in an action brought for that purpose in like manner as the validity of a deed purporting to convey land may be determined. This section has been construed by the courts, and I take it that the limitations laid down on section 1866, C. C. P., are applicable generally in principle to the surrogate's procedure under the new Surrogate's

Code. I have not the opportunity at the moment, nor is it necessary or proper for me, to discuss in this proceeding the nature of the general limitations upon the exercise of a jurisdiction to determine the construction, validity or effect of dispositions of property. Each case under the new act must be disposed of as it arises.

[3] The surrogate ought not in any event to entertain such proceedings as this merely for the purpose of removing doubts of the parties, provided the means of forming a correct legal judgment are patent on the fact of the will. In other words, there must be a substantial doubt, and a necessity shown for relief sought, or a case of some kind, made on some principle, before recourse to the surrogate for his determination under the new law will lie. Mellen v. Mellen, 139 N. Y. 219, 34 N. E. 925; McKinlay v. Van Dusen, 76 App. Div. 200, 205, 78 N. Y. Supp. 377; Monypeny v. Monypeny, 131 App. Div. 269, 115 N. Y. Supp. 804. This is not and cannot be in the nature of things a court of consultation. Executors having slight doubt cannot be allowed to come here under the new act and transfer all their burdens to the surrogate, especially I might remark (I hope with due gravity) while executors under the modern law are entitled to retain statutory commissions for the performance of the duties of their office.

If it is contended that the new act changes all former law and precedent, and that it invests the surrogate with the most extended power ever known in courts of justice to pass upon both legal and equitable titles derived from last wills, then the exercise of such jurisdiction must be subject to such reasonable rules as this court finds to be essential to the due administration of justice. For this point I am not without express authority. Matter of Mount, 185 N. Y. 162, 167, 77 N. E. 999.

One of the rules which I conceive the surrogate should lay down in proceedings of this character is that where the construction may, without any substantial prejudice to the parties meanwhile, be accorded at a later stage, in the regular way, on the settlement of the final accountings of the testamentary trustees or the personal representatives, that then such construction ought to be postponed by the surrogate until the final accounting or the settlement of the decree to be made thereon. Otherwise a party aggrieved by the construction accorded might be forced to take separate appeals, one from the decree affording construction and another from a decree of distribution on the final accounting. Such a course of procedure would be both vexatious and intolerable.

In this matter the petition on its face discloses the inherent defects I have just noticed. The construction sought is expressly declared to be for the very purpose of the final accounting in futuro. Now, all such matters I can better determine on such accounting and in the regular way. No valid reason is alleged in the petition for a resort to this court at this time, and therefore it cannot be allowed. The argument ab inconvenienti is not sufficient to change this conclusion.

These considerations bring me to another point of fundamental importance in proceedings of this character. It is stipulated by all the parties, including the special guardians of infants concerned, that for

the purposes of this proceeding the facts stated in the petition herein of Emma Louise Harden and others, verified October 19, 1914, are true, but that the statements in said petition as to the values are not to be binding upon a distribution or accounting, or except for the sole purpose of determining questions of construction. This strikes me as a very halting stipulation in a judicial proceeding. I doubt if a fact once stipulated in a judicial proceeding to be true for one kind of judicial relief may be taken as not true in another and later proceeding in the same court, at least if judicial action has once been predicated of such fact as true. I adverted to this point in a late case (Matter of Mesa y Hernandez, 87 Misc. Rep. 254, 149 N. Y. Supp. 536). But passing this for the present, the preliminary question in any proceeding for construction of a will before the surrogate is:

"Has the surrogate jurisdiction or power to take extrinsic evidence at all in a proceeding of this character for construction of a will?"

I have on several prior occasions ventured to intimate very plainly that the surrogate's power to take extrinsic evidence in a proper case was a necessary and logical complement of his general grant of jurisdiction to construe wills; for otherwise the jurisdiction must fail in every instance where it is necessary to have recourse to extrinsic evidence or go beyond the written documents open for construction. Matter of Sinnott, 82 Misc. Rep. 220, 143 N. Y. Supp. 546; Matter of Raab, 79 Misc. Rep. 188, 139 N. Y. Supp. 869; Matter of Swartz, 79 Misc. Rep. 395, 139 N. Y. Supp. 1105.

But I am confronted by a decision of the Court of Appeals bearing upon a part of the present section 2615, C. C. P., which always seemed to me, in effect, to deny that the surrogate has jurisdiction or power to take extrinsic evidence upon a proceeding for construction of a will. Matter of Will of Keleman, 126 N. Y. 73, 26 N. E. 968. As long as that decision is not limited or leaves the point in doubt, I shall labor under great uneasiness when receiving even competent extrinsic evidence in a matter of construction. If I am not allowed to consider extrinsic evidence, the stipulation in this matter before me must go for naught. If I have no power to go beyond the will, I cannot really consider the stipulation in this matter. It would be quite out of the case.

But I am further embarrassed by the tender of affidavits of Mary Harden Fowler, verified November 5, 1914, Emma Louise Harden, verified October 29, 1914, and Robert Huntley, verified May 26, 1914, the facts therein stated to be used on the construction. These affidavits were received without objection, and they stand in the same light as to their competency as the facts stipulated expressly. The affidavits of Mary Harden Fowler, I notice also, end by asking the surrogate to simply construe the will and to make no directions as to distribution. This prayer is superfluous or supererogatory, as I am not likely to direct any distribution in this character of proceeding. This incident is only important as disclosing what a peculiar kind of judicial proceeding this at bar really is. But for the determination of this matter it will, in any event, not be necessary for me to go beyond the facts stated in the petition itself.

In so far as the new legislation sanctions the application of testamentary trustees to this court for its direction and assistance by way of construction, I am not disposed to deny that a proper case may be made for the application. I am convinced it will require grave consideration and much technical accuracy and labor if it is to be finally sustained in the court of review. In every such case some necessity for the interposition of the surrogate ought to be shown on the face of the petition.

[4] An objection that there is no ground for the interposition of the surrogate may be taken on the return of the citation or on the hearing. The issuance of the citation is only process or inceptive, and it does not dispose of the merits of the application as urged by petitioner's counsel. When the petition will lie for construction must be determined by the facts of each case. A case where construction might be formerly sought in the Supreme Court of this state, possessed after 1846 of equity jurisdiction, was to my mind disclosed in the opinion in Wager v. Wager, 89 N. Y. 161. But the conditions disclosed in that case are absent here. In the petition in this matter no relief is presently asked for, except construction to enable a distribution which can only take place hereafter in a separate proceeding. The new act does not contemplate that such a proceeding as this shall be a discovery proceeding to enable further proceedings in this court.

At this time the questions of distribution put to the surrogate in this proceeding are purely moot or abstract questions, in so far as any present necessity is disclosed. Courts never decide future or contingent questions, or unless they lead to immediate results or relief to the parties. Pomeroy's Eq. Jurisp. § 1157, and cases there cited.

Whether a proceeding by executors to obtain the direction of the surrogate in regard to the proper discharge of their duties may be taken in a proceeding of this character under the new legislation, I doubt. Clay v. Gurley, 62 Ala. 14; Ferrand v. Howard, 38 N. C. 381. If it be otherwise, then the legislation does not take into consideration the practical difficulties in this jurisdiction. It must be apparent to others as it is to me that the legislation, construed otherwise than as I have indicated, would substitute the discretion of the surrogate in every case for the discretion of testamentary trustees and personal representatives. Now, it would be impracticable and impossible for the surrogate in this jurisdiction to exercise a discretion in respect of every act of personal representatives or testamentary trustees.

When the hearing on the petition and answers in this matter came on before me, as the stenographer's minutes disclose, the special guardians and counsel for Mrs. Harden and Mrs. Fowler very properly stated that in their opinion the matter was not ripe for adjudication and that the determination of the surrogate should be postponed until the settlement of the accounts of the executors and trustees and the decree of distribution. But, with the exception of one guardian, this position has been since abandoned in the written briefs submitted to me, and all the parties before me, except one, ask for the judgment prayed by the petition. I am not convinced that this fact alters the legal situation. Much as I desire to be of use to those who see fit to resort to

this court, I must proceed on principle and not mero motu or by my own volition. Adjective or administrative law is always the fruit of past experience which can with advantage in no case be disregarded, even when the ostensible motive of the act is reformation or expedition of procedure.

In conclusion, let me add that it seems to me that on the face of the petition no valid ground is stated for a resort to the surrogate at this time, and that the relief expressly sought is appropriate for the proceeding to settle the accounts of the executors and trustees, and that at this time the issues should not be prejudged. While this is true, I cannot but regret that counsel should be inconvenienced by my conclusion; it would have been much more agreeable for me to have answered the questions put had I not been convinced that the public interest demanded otherwise. But I have no pride of opinion, and I trust that with due deference to orderly procedure the validity of my conclusion may speedily come under review by the proper authorities. Such a course would involve little expense and the estate is great.

Petition dismissed.