CITIZENS' MUTUAL AUTOMOBILE INSURANCE
COMPANY *v.* DOWNING.

1. Reformation of Instruments—Action at Law.
   Reformation of a written instrument cannot be accomplished in
   a law action.

2. Same—Jurisdiction—Parties.
   The reformation of a written instrument can only be made in
   a proper action and between parties to the agreement.

3. Subrogation — Automobile Insurance Policy — Release —
   Parties.
   There was no basis for a judgment for insurer under automobile
   insurance policy for breach of its subrogation agreement, where
   it appears it first settled for damages to car with the insured
   and that subsequently the insured had effected a release for
   personal injuries with the tort-feasor, the fact that the tort-
   feasor may also have thought settlement embraced damages
   to the car being of no concern in law action between insurer
   and insured to which the tort-feasor was not a party.

Appeal from Washtenaw; Rathbun (G. Arthur),
J., presiding. Submitted April 7, 1954. (Docket No.
18, Calendar No. 45,778.) Decided June 7, 1954.

Action by Citizens' Mutual Automobile Insurance
Company, a corporation, against Burrell and
Beatrice Downing for reimbursement under subroga-

References for Points in Headnotes

[1] 45 Am Jur, Reformation of Instruments §§ 87, 90.
[2] 45 Am Jur, Reformation of Instruments § 93.
[3] 29 Am Jur, Insurance § 1346.
[3] Right of insurer which has paid loss, as against the insured
    who has released or settled with third person responsible for
    the loss. 36 ALR 1268, 55 ALR 926.

tion agreement. Judgment for plaintiff. Defendants appeal. Reversed.

*Earl J. Demel,* for plaintiff.

*Ralph W. Cole,* for defendants.

SHARPE, J. This is an appeal from a judgment entered against the defendants and from an order of the trial court denying defendants' motions to set aside the judgment or to grant a new trial. The essential facts are as follows: On or about September 25, 1949, plaintiff insurance company issued a policy to Burrell Downing insuring defendants' automobile, including $75 deductible collision insurance. The contract of insurance includes a subrogation agreement as follows:

"In the event of any payment under this policy, the company shall be subrogated to all the assured's rights of recovery therefor against any person or organization and the assured shall execute and deliver instruments and papers required and whatever else is necessary to secure such rights. The assured shall do nothing after loss to prejudice such rights."

On October 25, 1949, defendants' car was involved in an automobile collision with a car owned by Grace Hall. As a result of this collision defendant, Burrell Downing, and 2 passengers, C. N. Goodrich and Ruth Brown, were injured and hospitalized.

On November 2, 1949, plaintiff insurance company settled with defendants for the car damage in the amount of $1,300 which was the agreed property damage loss less $75 deductible as provided under the terms of the policy. On the same day defendants executed a subrogation agreement to plaintiff which contained the following:

"In further consideration of such payment, the undersigned hereby assigns and transfers to the said

company, each and all claims and demands against any other party, person, persons, property or corporation, arising from or connected with such loss and damage (and the said company is hereby subrogated in the place of and to the claims and demands of the undersigned, against said party, person, persons, property or corporation, in the premises) to the extent of the amount above named, and the said company is hereby authorized and empowered to sue, compromise, or settle in my name or otherwise to the extent of the money paid as aforesaid.

"I also do hereby covenant that I have not released or discharged any such claim or demand against such other party and that I will furnish to said company any and all papers and information in my possession, necessary for the proper prosecution of such claims."

On February 28, 1950, Burrell Downing executed a release to Auburn Hall and Grace Hall for personal injuries received in the automobile collision for the sum of $50. Similar releases were also executed by Miss Brown for $100; Mr. Goodrich, $50; and $50 for Ralph W. Cole, attorney for the above parties. Several days later Attorney Schaflander informed Attorney Cole that Downing had not signed the release he had intended for Downing to sign. The release signed by Downing reads, in part, as follows:

"That the undersigned, being of lawful age, for the sole consideration of ——— dollars, to the undersigned in hand paid, receipt whereof is hereby acknowledged, does hereby for my heirs, executors, administrators, successors and assigns, release, acquit and forever discharge Auburn Hall and Grace Hall, of the county of Wayne and State of Michigan, and their agents, servants, successors, heirs, executors, administrators and all other persons, of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has or which may hereafter accrue

on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 25th day of October, A.D., 1949, at or near Fairbrook avenue, city of Northville, county of Wayne and State of Michigan."

It also appears that defendant, Burrell Downing, has not executed any release except the above and no action or proceeding has been instituted to rescind, cancel or modify the release signed by Downing. It also appears that plaintiff has never made any demand or instituted any action against the Halls to collect from them under plaintiff's subrogation agreement with defendants.

On August 22, 1950, plaintiff brought the present action in assumpsit, based upon all of the common counts, with a count added in trespass based upon fraud, against defendants. The declaration contains the following:

"That at the time the foregoing settlement was entered into and consummated between your plaintiff and the defendants, both defendants made verbal and written representations to your plaintiff, to the effect that they had not released or discharged any such other third party or parties to said accident, who might be financially or legally responsible for the foregoing damages, which your plaintiff paid, which representations are set forth in a certain subrogation agreement, which your plaintiff will produce at the trial hereof, a copy of which agreement is attached hereto and made a part hereof and marked plaintiff's exhibit (A) and to which specific reference is made.

"Your plaintiff further alleges that it subsequently determined that said representations made by the defendants herein and in contravention of the written terms of said policy and subrogation agreement

were false and made with the intent to perpetrate a fraud on your plaintiff, inasmuch as the defendants had made full settlement and acquittance with other parties involved in said accident, to whom your plaintiff could have looked for reimbursement, and had likewise received consideration therefor, which consideration was properly due your plaintiff, all to the detriment and prejudice of your plaintiff's rights under the policy of insurance and said subrogation agreement, all of which facts were subsequently acknowledged by the defendants herein and their duly authorized agents, which unauthorized settlement destroyed and voided any rights whatsoever your plaintiff held by reason of the policy of insurance heretofore referred to and the attached subrogation agreement, being plaintiff's exhibit (A)."

Defendants filed an answer which contains the following:

"Defendants state that they are not aware of any determination that plaintiff may have made nor are they concerned with what determination plaintiff may have made. Further answering said paragraph, defendants deny that they made any misrepresentations to plaintiff or that they made any false statements and deny that they did commit any wrong or fraudulent act regarding plaintiff, and also deny they 'had made full settlement and acquittance with other parties involved in said accident.' Further answering paragraph, defendants deny that they have received any consideration properly due plaintiff or that they entered into any settlement to the detriment or prejudice of plaintiff's rights."

The cause came on for trial before the court without the aid of a jury. The court entered judgment for plaintiff in the sum of $843.50. In an opinion filed the trial court stated:

"It is the finding of this court that the tort-feasors believed, and rightfully so, that the compensation that they were paying released them from any claim

of damage to the car of defendants, and this court holds the defendants to such contract and binds them under the release prepared for them and which for all purposes of this lawsuit they should and must have signed.

"We therefore ask this question, namely, when the assured (defendants) has breached his subrogation agreement with the insurance company, thereby defeating the right of action of the insurance company against the tort-feasor, does the insurance company have a right of action against the insured for the loss and damage of the insurance company? The answer of this court is yes."

Defendants appeal and urge, among other reasons, that the trial court was in error in gránting reformation of a written agreement in a law action between parties who were not the parties to the written instrument and when no such issue was presented in the pleadings. It is to be noted that the declaration charges that when the settlement was made by plaintiff insurance company for damage to the car on November 2, 1949, defendants made verbal and written representations to the effect that they had not released or discharged any third party who might be legally responsible for the damage to defendants' car, and that such representations made by the defendants were false and made with the intent to perpetrate a fraud on plaintiff insurance company, because defendants had made full settlement with other parties to whom plaintiff insurance company could have looked to for reimbursement.

The record shows that plaintiff insurance company settled with defendants for the damage to the car on November 2, 1949, and that defendant, Burrell Downing, made a settlement with the Halls for damages for personal injuries on February 28, 1950.

The record of testimony taken at the trial is utterly void of any evidence that defendants on the day of

November 2, 1949, or at any other time violated the terms of the subrogation agreement. The trial court was under the impression that equity principles were applicable to the facts in the case at bar when he stated in his opinion:

"Whether the releases were signed by the wrong parties either by mistake or intention is immaterial."

In effect the trial court sought reformation of the releases, but reformation of a written instrument cannot be accomplished in a law action. See *Rossbach* v. *Continental Insurance Company*, 276 Mich 122; and *Curtis* v. *Dearborn National Insurance Company*, 329 Mich 601. Such reformation can only be made in a proper action and between parties to the agreement. In our opinion there was no evidence upon which a judgment for plaintiff insurance company could be founded.

The judgment is reversed without a new trial. Defendants may recover costs.

Butzel, C. J., and Carr, Bushnell, Boyles, Reid, Dethmers, and Kelly, JJ., concurred.